UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BCI BURKE, LLC,

        Plaintiff,

      v.                                     Case No. 12-C-158

PLAYWORLD SYSTEMS, INC.,

        Defendant.

**DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

## I.  PROCEDURAL BACKGROUND

The plaintiff, BCI Burke, LLC ("BCI" or "plaintiff"), filed the complaint in this case on February 15, 2012, seeking declaratory judgment against the defendant, Playworld Systems, Inc. ("Playworld" or "defendant").  Specifically, the plaintiff seeks declaratory judgment that BCI's "products do not infringe upon any trade dress rights of Playworld Systems," that BCI's use of "JOLLY TOPPERS does not infringe upon any trademark rights of Playworld Systems in the mark LOLLITOPS," and that BCI "is not liable for any alleged unfair competition, deceptive trade practice or any other violation of law asserted by Playworld."  (Compl. ¶¶ 13–32, ECF No. 1.)

On April 25, 2012, Playworld filed a motion to dismiss the complaint or alternatively to transfer the case to the Eastern District of Pennsylvania.  (Def.'s Mot., ECF No. 10.)  The motion has been fully briefed and is now ready for resolution by this court.  For the reasons that follow, the court will grant Playworld's motion to dismiss.

## II.  FACTUAL BACKGROUND

Playworld is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business in Lewisburg, Pennsylvania.  (Pl.'s Br. 3, ECF No. 11.)  Playworld manufactures, sells, and distributes park and playground recreational equipment in Pennsylvania and throughout the United States.  (Pl.'s Br. 3, ECF No. 11.)  BCI is a limited liability company headquartered in Fond du Lac, Wisconsin.  (Compl. ¶ 2, ECF No. 1.)  BCI also manufactures and sells children's playground equipment.  (Compl. ¶ 8, ECF No. 1.)

On or about January 23, 2012, Playworld sent a cease and desist letter to BCI asserting that "Playworld is the owner of the distinctive trade dress of many of its products featured on its website and in its product catalogs, including its ROCKBLOCKS products."  (Compl. Ex. A at 1, ECF No. 1-1.)  The letter further states the following:

> It has recently come to our attention that your company is selling and offering to sell products, under the name RockIt, which appear to be copies of Playworld's distinctive ROCKBLOCKS products.  Specifically, and by way of example, your RockIt Tunnel, shown in Exhibit C hereto, appears to be a direct knockoff, as it is assembled the same way, organized the same way, and has the same width and height.  It also has virtually identical styling, with the only difference being that the holes in the walls are in different locations.  This minor change is not sufficient to distinguish your product from Playworld's ROCKBLOCKS products, and as a result, your product is likely to cause confusion among the trade and purchasing public.

> The sale and/or offer to sell products which are confusingly similar to our client's distinctive trade dress, and which are likely to cause confusion among the trade and purchasing public, is a direct infringement of Playworld's valuable intellectual property.  Such infringing use constitutes, *inter alia*:

> •     Trade dress infringement, false advertising and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a);

> •     Common law unfair competition in the Commonwealth of Pennsylvania; and

> •     Unfair competition under various state statutes including the Uniform Deceptive

2

Trade Practices Act.

. . . .

I cannot overstate the seriousness of this matter. Sections 43(a) of the Lanham Act, as well as various state statutes, provide for the imposition of severe penalties against those who commit acts of unfair competition and deceptive trade practices. The courts may require a defendant to pay up to treble damages caused by the infringement, all profits derived from the unauthorized use of the plaintiff's trade dress, and attorneys' fees.

We look forward to receiving your response to this letter by no later than February 4, 2012. If we do not receive the required information by that date, we will assume that you have no interest in amicably resolving this matter and Playworld will take whatever action it deems necessary.

(Compl. Ex. A at 1–3, ECF No. 1-1.)

On January 27, 2012, counsel for Playworld "received an email from [BCI]'s counsel advising that he would be unable to respond to [the] January 23, 2012 cease and desist letter by the requested date of February 4, 2012, due to a long planned vacation and the recent loss of an associate." (Frandsen Decl. ¶ 3, ECF No. 17.)

On February 1, 2012, Playworld agreed to BCI's requested extension by email and also attached a substantially similar letter addressed to BCI stating that BCI "is also infringing the trademark and trade dress of Playworld's LOLLITOPS roofs" through BCI's product "promoted and/or sold under the trademark JOLLY TOPPERS." (Compl. Ex. B at 1, ECF No. 1-2.)

On February 15, 2012, BCI filed the complaint in the instant action and responded to Playworld's cease and desist letters on February 16, 2012. (Frandsen Decl. Ex. 3, ECF No. 12-3.) The complaint was served on Playworld on March 2, 2012. (Frandsen Decl. ¶ 4, ECF No. 17.) Playworld and BCI agreed to a thirty day extension to answer or otherwise plead because Playworld's counsel was recuperating from an unexpected surgery and Playworld needed to secure local counsel in Wisconsin. (Frandsen Decl. ¶ 4,

3

ECF No. 17.)  The parties also planned to sit down for a "frank discussion" about the situation on April 6, 2012.  (Frandsen ¶ 5, ECF No. 17.)

The parties met on April 6, 2012, but did not reach a resolution of the disagreement between the parties.  (Frandsen Decl. ¶ 6, ECF No. 17.)  Playworld then filed a complaint against BCI on April 24, 2012, in the United States District Court for the Eastern District of Pennsylvania.  (Frandsen Decl. ¶ 6–7, ECF No. 17.)  The complaint asserts two counts of trade dress infringement, one count of trademark infringement under federal law, one count alleging unfair competition under federal law, one count of false designation of origin, one count alleging trademark and unfair competition claims under Pennsylvania statutory law, one count alleging trademark and unfair competition claims under Pennsylvania common law, one count alleging unfair or deceptive acts or practices in violation of Pennsylvania unfair trade practices and consumer protection laws, and one count alleging a claim of unjust enrichment.  (Barrick Decl. Ex. F., ECF No. 13-6.)  The complaint was served on BCI on May 22, 2012.  (Frandsen Decl. ¶ 7–8, ECF No. 17.)

## III.  DISCUSSION

Playworld makes three arguments in support of its motion.  First, it argues that the court should decline discretionary jurisdiction over the declaratory judgment suit and dismiss the action in favor of the pending coercive action in the Eastern District of Pennsylvania.  Second, Playworld argues that the case should be dismissed for improper venue.  Last, Playworld asserts that if the court does not dismiss the case, then the action should be transferred to the Eastern District of Pennsylvania and consolidated with the coercive action pending in that district.

Title 28, United States Code, Section 2201(a) provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may

4

declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." To satisfy the "actual controversy" requirement, the dispute must be "'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)). More specifically, a "declaratory judgment plaintiff must be able to show that the feared lawsuit from the other party is immediate and real, rather than merely speculative." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002).

Playworld points to the following statement in BCI's brief as evidence that BCI "lack[ed] the belief at the time of the filing of the declaratory judgment action that it would face suit":

> Playworld gives the impression that the now pending Pennsylvania action was imminent, and that BCI Burke pulled the rug out from under Playworld. However, a closer look at the facts, namely the two cease-and-desist letters sent by Playworld, reveals no threat of imminent suit.

(Pl.'s Resp. 1, ECF No. 14.) Without a belief that a suit was imminent, argues Playworld, there is no case or controversy and thus, the court lacks subject matter jurisdiction. (Def.'s Reply 2, ECF 16.)

Despite BCI's statement in its brief, the totality of the circumstances demonstrate that the fear of a lawsuit from the other party was more than speculative. *See Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995) (looking at the totality of the circumstances to determine whether a suit against the plaintiff in a declaratory judgment action was imminent at the time the plaintiff filed suit). In fact, in the letters sent by Playworld to BCI, Playworld asserts that BCI's products infringe on Playworld's trademarks. The letters also put forth the various laws protecting trademarks from infringement and enforcing penalties against infringers, if liability is found. Thus, there is a "substantial

5

controversy" regarding whether BCI was and is infringing on Playworld's trademarks.

Additionally, the letters from Playworld demonstrate that the controversy is sufficiently immediate and real. The letters allege trade dress infringement, false advertising, and unfair competition and discuss the potential penalties if BCI were found liable by a court. Additionally, Playworld set a date for response; without a response by that date Playworld would "assume that [BCI] ha[s] no interest in amicably resolving this matter and Playworld will take whatever action it deems necessary." (Compl. Ex. A at 3, ECF No. 1-1.) This adequately presents a case or controversy worthy of resolution pursuant to 28 U.S.C. § 2201(a).

The court therefore finds that a case or controversy exists and the court may, within its discretion, declare the rights of the parties. *See Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987) ("[A] federal court may grant a declaratory judgment to prevent one party from continually accusing the other, to his detriment, without allowing the other to secure an adjudication of his rights by bringing suit.") The question that remains, however, is whether the court will exercise its discretion and decline jurisdiction over the declaratory action.

"It is well settled that the federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction." *Tempco.*, 819 F.2d at 747. In general, "a federal suit may be dismissed 'for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court.'" *Serlin v. Arthur Anderson & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (quoting *Ridge Gold Std. Liquors v. Joseph E. Seagram*, 572 F. Supp. 1210, 1213 (N.D. Ill. 1983)).

"The general rule in situations where mirror image actions are pending in different districts, whether filed in those courts originally or removed there, is that the first-filed action will be given priority

6

and allowed to proceed in favor of the later action." *Barrington Grp., Ltd. v. Genesys Software Sys., Inc.*, 239 F. Supp. 2d 870, 873 (E.D. Wis. 2003). In the Seventh Circuit, the first-to-file rule is not applied rigidly. *Id.* In fact, "a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed and the case allowed to proceed in the usual way." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th Cir. 1993). *See also Tempco*, 819 F.2d at 749 ("Where . . . the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed four days later."); *Eli's Chicago Finest, Inc. v. Cheesecake Factory, Inc.*, 23 F. Supp. 2d 906, 908 (N.D. Ill. 1998) (compiling cases). In such situations, the defendant in the declaratory action bears the burden of demonstrating that "compelling circumstances" or "a sufficient imbalance of convenience" overcomes first-to-file rule. *Barrington*, 239 F. Supp. 2d at 874.

With regard to the convenience of the parties, Playworld has not demonstrated that its choice of forum is more convenient for the parties. Instead, each party offers evidence that the party's chosen forum is of equal convenience as the opposing party's choice of forum. Playworld states that (1) "all of Playworld's records and its fact witnesses are in Pennsylvania ;" (2) Playworld's business is based in Lewisburg, Pennsylvania;" (3) "Playworld's marketing and design personnel are based in Lewisburg or Philadelphia;" and (4) "Playworld's executives would be prejudiced by traveling to Wisconsin to defend its own rights, under Pennsylvania law." (Def.'s Br. 8, ECF No. 11.) Additionally, Playworld claims that BCI "has agents for sales of its products, including the accused products within the Eastern District of Pennylsvania" and that BCI "may be found or transacts business in the Eastern District of Pennsylvania, and the alleged claims arose and are continuing to occur within the Eastern District of Pennsylvania." (Def.'s Br. 8, ECF No. 11.)

7

BCI argues that the events giving rise to the lawsuit arose in the Eastern District of Wisconsin. (Pl.'s Resp. 6, ECF No. 14.) It also states that BCI "is headquartered in Fond du Lac, Wisconsin" and "manufactures and sells the accused playground equipment, which is the whole basis for this declaratory judgment action, in Wisconsin." (Pl.'s Resp. 6, ECF No. 14.) Further, "Playworld mailed two letters into [the Eastern District of Wisconsin] accusing BCI Burke of trade dress and trademark infringement" and Playworld "has made substantial sales of its playground equipment . . . into Wisconsin." (Pl.'s Resp. 6, ECF No. 14.)

Based on the facts presented, Playworld is unable to demonstrate a sufficient imbalance of convenience to overcome the first-to-file rule. The court will therefore address whether Playworld has demonstrated that compelling circumstances warrant dismissal of the case.

The facts demonstrate that BCI was aware of Playworld's potential trade dress infringement, false advertising, and unfair competition claims and also that Playworld would likely bring suit in Pennsylvania, which is the location of Playworld's incorporation and headquarters, and is also the location of Playworld's counsel. Four days after receiving Playworld's first cease and desist letter, BCI asked for an extension to respond, which Playworld granted. On February 15, 2012, during the agreed upon extension, BCI filed this lawsuit. On February 16, 2012, BCI responded to Playworld's cease and desist letters.

BCI is correct in stating that responding to Playworld's letters is not a prerequisite to filing a declaratory action. However, the circumstances surrounding the letters and the ultimate filing of the suit assist the court in determining whether BCI filed this case in anticipation of Playworld filing its own lawsuit in a different forum. Indeed, BCI requested an extension from Playworld, potentially delaying Playworld's decision on whether to file suit until after the expiration of the letters' deadlines, and then

8

BCI filed suit while Playworld waited for a response. Such actions indicate an attempt to secure BCI's forum of choice at the expense of Playworld's ability to choose its own forum. *See Inland Steel Co. v. Van Leer Containers, Inc.*, No. 89 C 9308, 1990 WL 77994, at *1 (N.D. Ill. June 1, 1990) (court found the plaintiff's decision to file suit the day before a third settlement conference had been scheduled to be of particular importance in the court's decision to decline to exercise jurisdiction over a declaratory judgment action). I therefore find that BCI filed suit in anticipation Playworld's mirror coercive action in another forum.

BCI points to Playworld's failure to file a mirror image coercive action in Pennsylvania until ten weeks after BCI initiated the instant action. However, it is clear that the parties were in contact with one another regarding a potential resolution of the case prior to expending time and resources on litigation. Playworld states that it delayed filing its lawsuit until after the discussions between the parties broke down. Thus, the delay in filing is reasonable in light of the facts and does not prohibit a finding that a suit by Playworld was imminent.

There are two significant reasons to dismiss a declaratory action brought in anticipation of an infringement suit. "First, allowing a potential defendant to make a procedural preemptive strike robs the natural plaintiff of his ability to select his forum. . . . Second, prohibiting a 'race to the courthouse,' encourages settlement and discourages costly duplicate litigation." *Eli's Chicago Finest*, 23 F. Supp. 2d at 909 (internal citations omitted).

Both situations are implicated here. First, the plaintiff in this case won the proverbial "race to the courthouse." In such circumstances, it would be inappropriate to maintain suit where the plaintiff and "natural defendant" chose to file the case, and thereby rob the defendant and "natural plaintiff" of its choice of forum to hear the case. Second, Playworld, and those in similar situations, should not be

9

penalized for attempting to resolve a case outside of the courtroom before expending the resources of the parties and the courts litigating the case. The court therefore finds that allowing BCI to choose the forum in light of an imminent suit brought by Playworld would not serve the interests of justice. Thus, I will dismiss the action in favor of the case pending before the United States District Court for the Eastern District of Pennsylvania.

Because the court will dismiss the case, there is no need to address Playworld's arguments that the court should dismiss the case due to improper venue or that the court should transfer the action to the Eastern District of Pennsylvania. The parties should direct any arguments regarding venue pursuant to 28 U.S.C. § 1404(a) to the court hearing the infringement action. *See Trippe*, 46 F.3d at 629 (arguments regarding venue should be addressed to and decided by the court hearing the infringement action).

**NOW THEREFORE IT IS ORDERED** that the defendant's motion to dismiss the complaint be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the action be and hereby is **DISMISSED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this 25th day of June 2012, at Milwaukee, Wisconsin.

**BY THE COURT:**

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

10